UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLAREDI CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV1304 RWS |
| ) | |
| SEEBEYOND TECHNOLOGY ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Claredi Corporation creates and sells computer software and other services to healthcare providers, payors and clearinghouses to help them ensure that they are in compliance with the Health Insurance Portability and Accountability Act's (HIPAA) regulations. Defendant SeeBeyond Technology develops business integration software.

Claredi and SeeBeyond entered into an agreement in which SeeBeyond was to market software that contained Claredi's HIPAA compliance testing software to SeeBeyond's customers. Claredi filed the present multi-claim lawsuit alleging that SeeBeyond breached the terms of the agreement. SeeBeyond has moved for summary judgment on four of Claredi's claims. Because there are genuine issues of material fact as to Claredi's breach of contract, *quantum meruit*, and trademark infringement claims, or because SeeBeyond is not entitled to a judgment as a matter of law on these claims, I will deny SeeBeyond's motion for summary judgment. I will grant SeeBeyond's motion for summary judgment on Claredi's intentional interference with a prospective economic advantage claim.

*Background*

HIPAA created rules and regulations concerning the protection of confidential medical records. Under HIPAA, businesses and healthcare providers must comply with federal regulations concerning the handling and dissemination of confidential healthcare records. These regulations cover the electronic data interchange between healthcare providers, payors and clearinghouses.

Claredi provides comprehensive HIPAA electronic data interchange transaction compliance testing for these entities to assist in their compliance with HIPAA. Claredi markets various systems and services to these entities including systems known as Claredi Classic, Faciledi, and Velocedi.

SeeBeyond develops and markets business integration software, which enable disparate software systems to communicate in a multitude of business applications. SeeBeyond developed its own HIPAA compliance testing software but was concerned that it would not meet all of its customers' demands for HIPAA certification requirements and validations.

In order to alleviate this problem SeeBeyond met with Claredi seeking its expertise in developing compliance testing software. Claredi and SeeBeyond entered into a Development and Marketing Agreement (the Agreement) to develop and market HIPAA transaction compliance testing systems.

To meet the immediate needs of SeeBeyond's HIPAA transaction compliance testing customers, Claredi developed a system which was integrated into SeeBeyond's system using integrated software (the Developed Product). The combination of the system with the Developed Product created a HIPAA transaction compliance testing system that had reduced functionality

but was usable by SeeBeyond's customers. This product is referred to as the Grandfather System (also referred to as the Subset Integrated Product which is defined in Exhibit B ¶ 2.2.3 of the Agreement). Claredi contends that this system was purposefully designed with reduced functionality. It was to be made available to SeeBeyond's customers on a limited, temporary basis while an updated fully functional HIPAA transaction compliance testing system, called the Integrated Product, was developed jointly by Claredi and SeeBeyond.

The Integrated Product was to be marked to SeeBeyond's Grandfather System users as well as to SeeBeyond's other customers. The Integrated Product was to include Claredi's new HIPAA transaction compliance testing product called Faciledi. Claredi alleges that its business arrangement with SeeBeyond entitled Claredi to approximately $16,800 per year per customer site for the Grandfather System and approximately $100,000 per year per customer site for the Integrated Product. (First Am. Compl. at ¶ 21)

The Agreement provided that SeeBeyond would use it best commercial efforts, and/or reasonably diligent efforts to sell all of SeeBeyond's customers the Integrated Product.

Claredi alleges that SeeBeyond breached the Agreement by modifying Claredi's compliance software and marketing it to SeeBeyond's customers to the exclusion of Claredi's products. In order to modify the software, Claredi alleges that SeeBeyond reverse engineered Claredi's software and misappropriated its trade secrets and confidential information, including error codes and messages. Claredi also alleges that its efforts to sell its products to SeeBeyond's customers have been frustrated because SeeBeyond is telling its customers not to use Claredi's compliance products. SeeBeyond is allegedly promising to provide its customers with compliance software, developed by SeeBeyond, at no charge.

SeeBeyond has moved for a partial summary judgment on Claredi's breach of contract and *quantum meruit* claims. SeeBeyond also seeks summary judgment on Claredi's trademark infringement and intentional interference with a prospective economic advantage claims.

*Legal standard*

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and states that summary judgment is allowed only when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). In determining a summary judgment motion, the courts must view the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden then shifts to the non-moving party to show through affidavits and other evidence that a genuine dispute of material fact still exists. FED. R. CIV. P. 56(e)(2). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

*Discussion*

**Breach of Contract and Quantum Meruit Claims**

In its breach of contract claim Claredi asserts that:

(1) SeeBeyond failed and neglected to use its "best commercial efforts" to sell its customers the Integrated Product;

(2) SeeBeyond breached the contract by modifying the Grandfather System;

(3) SeeBeyond has failed to pay Claredi for the goods and services provided under the contract including making its Grandfather System available to SeeBeyond's customers;

(4) SeeBeyond has not paid Claredi the agreed price for fully functional HIPPA systems provided to SeeBeyond's customers but instead paid Claredi as if the systems provided to customers was the Grandfather Systems;

(5) SeeBeyond violated the Agreement by publishing Claredi's confidential information, including error codes and messages, to SeeBeyond's customers; and

(6) SeeBeyond violated the Agreement by reverse engineering Claredi's source code to obtain password information used in obtaining Claredi's trade secrets and confidential information for use in upgrading the Grandfather System.

(First Am. Compl.)

In its *quantum meruit* claim, Claredi asserts that SeeBeyond failed to fully compensate Claredi for the goods and services Claredi provided to SeeBeyond which enabled SeeBeyond to provides its customers with HIPAA compliance testing software.

SeeBeyond moves for partial summary judgment on Claredi's breach of contract and *quantum meruit* claims "with respect to exclusivity, SeeBeyond's right to enhance the Grandfather product, and the damages available to Claredi on its contract claims." (Defs.' Mot. for Summ. J. at 1)

*Exclusivity*

The central issue of Claredi's breach of contract claim is that SeeBeyond failed to use its reasonably diligent efforts ( and/or best commercial efforts) to sell the Integrated Product which

included Claredi's Faciledi product as a key component. Claredi alleges that SeeBeyond did not make the proper effort to sell the Integrated Product. Claredi asserts that, to the contrary, SeeBeyond improperly upgraded the functionality of the Grandfather System and marketed that system to new customers in violation of SeeBeyond's commitment to sell the Integrated Product. Claredi also asserts that SeeBeyond improperly developed HIPAA compliance testing programs with Claredi's competitors and/or marketed competitor's compliance software instead of Claredi's.

SeeBeyond contends that it was free under the Agreement to sell other companies' compliance testing programs and was free to develop its own compliance software with the help of Claredi's competitors. SeeBeyond asserts that the Agreement did not contain an exclusivity clause that prevented it from working with Claredi's competitors.

Under the Agreement SeeBeyond stated that it intended to "***discontinue development*** of its existing X12 HIPAA Testing product, and instead is entering into this Agreement, ***marketing the Integrated Product*** (defined below) ***as its primary X12 HIPAA Testing offering for both existing and potential customers***..." (Defs.' Mem. in Supp. Tab 1 at 1 Recital C.)(emphasis added). "[A]nd ***will use reasonably diligent efforts to market and distribute the Integrated Product*** according to the terms of the exclusive arrangement set forth in Section 10.3." (Id. at Recital E.)(emphasis added). In addition, the Agreement states "that SeeBeyond ***will use its best commercial efforts to sell all its licensees*** [of SeeBeyond's X12 HIPAA Testing product] ***the Integrated Product***." (Id. at Tab 1 Ex. B 2.2.3.)

The Agreement also grants SeeBeyond the ability to "***independently develop*** for itself, or

for others, a software program or product that performs the same or similar functions as those of Faciledi." (Id. at Tab 1 ¶ 3.8.3.)(emphasis added). The independent development of such a product means that the product "*was created exclusively by SeeBeyond* without reference to or use of any Claredi Product or any Claredi Confidential Information." (Id.)(emphasis added).

Based on the language of the Agreement, SeeBeyond clearly had a duty to make reasonably diligent efforts to sell the Integrated Product to it current and potential customers who needed HIPAA compliance testing. It also was allowed to develop its own software but must do so independently. Claredi claims that SeeBeyond made little or no effort to sell the Integrated Product and in fact promoted its own or Claredi's competitor's product instead. Claredi also asserts that SeeBeyond was developing compliance software with Claredi's competitors and /or sharing Claredi's confidential information with Claredi's competitors in violation of the Agreement. SeeBeyond seeks a judgment as a matter of law on these claims because asserts its actions did not breach the Agreement. SeeBeyond is not entitled to summary judgment on this issue. Whether SeeBeyond's efforts to market the Integrated Product and its dealings with Claredi's competitors breached the Agreement are issues of fact to be decided by a jury.

*Increased Functionality of the Grandfather System*

Claredi asserts that SeeBeyond, in breach of the Agreement, impermissibly upgraded the functionality of the Grandfather System and marketed that system to new customers instead of marketing the Integrated Product. Claredi claims that SeeBeyond was able to modify the Grandfather System by impermissibly reverse engineering Claredi's source code. Claerdi claims that SeeBeyond charged more for the increased functionality product but failed to share the

increased proceeds with Claredi. These actions cost Claredi compensation as contemplated under the Agreement.

SeeBeyond seeks a judgment on this claim asserting that the Agreement authorized SeeBeyond to modify the Grandfather System. In support of this proposition, SeeBeyond cites to paragraphs 3.1.1 and 3.2.1 of the Agreement. Neither of these provisions of the Agreement support SeeBeyond's position.

By there express terms, these provisions only grant SeeBeyond the right to modify the Integrated Product. That product was to be the joint creation of SeeBeyond and Claredi using Claredi's Faciledi product. These provisions do not permit SeeBeyobnd to modify the Grandfather System. As a result, SeeBeyond's motion for summary judgment on this ground will be denied.

*Limitation of Contractual Damages*

*Lost profits not recoverable*

SeeBeyond asserts that the Agreement bars Claredi from recovering **any** lost profits. In support of this proposition SeeBeyond relies upon section 7.3 of the Agreement titled "Limitation of Damages and Liability." SeeBeyond relies on following language of the that section:

> NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF ANTICIPATED PROFITS OR BENEFITS, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(Defs.' Mem. in Supp. Tab 1 at ¶ 7.3)

SeeBeyond contends that this section bars the recovery of **all** lost profits. Claredi

contends this reading of the provision is too broad and that the language "including but not limited to loss of anticipate profits" is clearly limited as a subset of the preceding language "any indirect, incidental or consequential damages." In other words, Claredi argues that the language limits indirect loss of anticipated profits but not direct damages in the form of lost profits.

The Agreement between Claredi and SeeBeyond specifies that any disputes arising out of or relating to the Agreement will be governed by California law. In a California case involving a strikingly similar contractual dispute the court found that a similar contract clause barring loss profits was modified and applicable to only indirect damages. Coremetrics, Inc. v. Atomic Park.com, LLC, 2005 WL 3310093, at *4 (N.D. Cal. December 7, 2005.) The court went on to rule that the contract's limitation of indirect damages "plainly incorporates the longstanding and deeply-rooted rule of Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854), which provides that recovery for breach of contract should compensate the non-breaching party for damages which naturally arise out of the breach and which were within the reasonable contemplation of the parties at the time the contract was formed, i.e. direct damages." Id. Furthermore, California law defines the measure of damages in a breach of contract case is "'the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.'" Id. (quoting Cal. Civ. Code §3300). The court concluded the contract provision barring indirect damages in the form of lost profits did not bar the recovery of lost profits as a measure of direct damages.

SeeBeyond contends that the decision in Coremetrics, differentiating lost profits which are direct from those that are indirect, was "directly refuted" by the decision in iTech Group, Inc.

v. National Semiconductor Corp., 2006 WL 3587140, * 9 (Cal. Ct. App. December 11, 2006).[1]

The ruling in iTech does not support SeeBeyond's contention. In iTech, the plaintiff sued defendant for breach of contract over defendant's failure to provide plaintiff with computer software source codes. The plaintiff sought the profits it would have made if the defendant had not breached the contract by failing to provide the source codes. The contract contained a provision similar to section 7.3 in the present case regarding the barring of lost profits that are indirect or consequential damages. The court did not hold that all lost profits were barred because of this clause as SeeBeyond claims (and asserts in the present case). To the contrary, the court distinguished between direct and indirect damages and ruled that even if the profits plaintiff sought to recover were general damages they were barred by another limitation of damages provision in the contract. Id. The court noted that it was skeptical that the profits plaintiff sought were general damages, apparently because the plaintiff "was not seeking damages based on its expectation of profits from performance of the License Agreement, but only the profits it had given up by relying on NSC's promise." Id. at *8. Unlike the plaintiff in iTech, Claredi is seeking damages based on its expectations of profits from SeeBeyond's promise to make reasonably diligent efforts (and/or best commercial efforts) to sell the Integrated Product.

I find that Claredi's argument that it may seek direct damages in the form of lost profits is clearly supported by section 7.3. The Agreement language is unambiguous on this point. A plain

---

[1] Citation to and reliance upon an unpublished California case is allowed in federal court. See In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation, 113 F.3d 1484, 1493 n.11 (8th Cir.1997). See also Defs' Memo. in Supp. at 23 n.9 citing In re Temporomandibular, for the same proposition.

reading of section 7.3 limits only *indirect* loss of profits and not lost profits which are direct damages, that is, damages which naturally arise out of the breach and which were within the reasonable contemplation of the parties at the time the contract was formed.[2]

As a result, Claredi may seek lost profits which are a direct result of SeeBeyond's alleged breach of the Agreement. Claredi is entitled to present evidence to the jury of sales of the Integrated Product that Claredi thinks would have been made if SeeBeyond had not breached its duty to make the appropriate sales efforts under the Agreement. This would include evidence of sales of the Integrated Product that would have been made if SeeBeyond had not allegedly substituted and sold the impermissibly modified Grandfather System. These sales figures are foreseeable measures of direct damages. It will be up to the jury to determine whether these sales would have been made if SeeBeyond did not breach the Agreement.

*Breach of contract damages limited to $14,400*

SeeBeyond also contends that any damages for its alleged breach of contact is limited, with certain exceptions[3], to the amount paid by Claredi to SeeBeyond, that is, $14,400. For this proposition SeeBeyond also relies on section 7.3 which states in relevant part that "each party's aggregate liability to the other for all loss and damage whether in negligence, contract or

---

[2] Lost profits "may be recovered if the evidence shows, with reasonable certainty, both their occurrence and extent. It is enough to demonstrate a reasonable probability that profits would have been earned except for the defendant's conduct. Moreover, [], a plaintiff is not required to establish the amount of its damages with absolute precision, and is only obliged to demonstrate its loss with reasonable certainty." Kids' Universe v. In2Labs, 116 Cal. Rptr.2d 158, 168 (Cal. Ct. App.2002)(internal quotations and citations omitted).

[3] Section 7.3 excludes from this limitation damages from breach under section 4 (fees payments), 6 (confidentiality), and 8 of the Agreement.

otherwise, arising out of or in connection with this agreement shall in any event be limited so that SeeBeyond would be liable to pay Claredi no more than the sum of the monies paid to SeeBeyond by Claredi under this Agreement ..."(capitalization omitted).

Claredi asserts that this provision in section 7.3 is void as against public policy based on section 1668 of the California Civil Code. That section states that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668 (West 1999). See also Farnham v. Superior Court, 70 Cal. Rptr.2d 85, 86 (Calf. Ct. App.1997)("contractual releases of future liability for fraud and other intentional wrongs are invariably invalidated."). Section 1668 also applies to contractual limitations of liability as well as a compete exemptions. See Health Net of California, Inc. v. Department of Health Services, 6 Cal. Rptr.3d 235, 247-248 (Cal. Ct. App. 2003).

SeeBeyond contends that section 1668 of the Civil Code is limited to tort actions and does not apply to Claredi's breach of contract claims. Claredi asserts that section 1668 applies to its breach of contract claims and voids the limitation of liability in section 7.3 of the Agreement because of SeeBeyond's breach the Agreement through fraud and intentional wrongs. Claredi asserts that SeeBeyond committed intentional wrongs and fraud by, among other claims, secretly increasing the Grandfather System's functionality to Claredi's detriment and by representing to Claredi that SeeBeyond was attempting to sell the Integrated Product (which contained Faciledi) while concealing its decision to put a hold on all such sales and/or promoting a competitor's

product instead.

The plain language of section 1668 does not distinguish between tort and contract claims. Its invalidation of contract provisions limiting damages for a parties' own fraud or intentional wrongful acts is equally applicable to breach of contract claims. See Civic Center Drive Apartments Ltd. Partnership v. Southwestern Bell Video Services, 295 F. Supp.2d 1091, 1106 (N.D. Cal. 2003)(breach of contract claims fall within section 1668 because that statute does not expressly limit the rule to tort claims). SeeBeyond cites to Health Net of California, Inc., 6 Cal. Rptr.3d 235 and to CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc., 48 Cal. Rptr.3d 271, 288 (Cal. Ct. App. 2006) for the proposition that section 1668 does not apply to breach of contract claims. Neither of these cases support that position.

As a result, I find that a material issue of fact exists as to whether the limitation of liability provision in section 7.3 of the Agreement is enforceable or whether it is void as against public policy based on SeeBeyond's alleged fraud and intentional wrongs committed in its alleged breach of the Agreement.

*Trademark Infringement*

Claredi owns the trademarks "Faciledi" and "Velocedi." Claredi asserts that SeeBeyond infringed on these marks in interstate commerce "through various acts by selling, offering for sale, and advertising [SeeBeyond's] products under those names." (First Am. Compl.) SeeBeyond seeks summary judgment on this claim because the Agreement at section 10.1.3 granted it the express license to use Claredi's marks. That section provides that "the parties may use each others Marks to carry out the purpose and intent of this Agreement." SeeBeyond asserts

that this provision gave it "broad, nearly unrestricted permission and authority to use Claredi's marks to carry out the purpose of the [A]greement." (Defs.' Mem. in Supp. at 15.) SeeBeyond argues that there is no evidence that SeeBeyond misused Claredi's marks.

I find that the record does contain evidence which may support Claredi's claim. This evidence includes information that SeeBeyond made representations to its customers that the Grandfather System already contained Claredi's Faciledi product or used the term Faciledi in describing the Grandfather System to customers (which Claredi alleges deterred these customers from upgrading to the Integrated Product that actually contained Faciledi). In addition, Claredi has evidence that SeeBeyond used the Faciledi mark along with Claredi's confidential information inside a program interface that SeeBeyond created for Clarerdi's competitor Edifecs. This evidence creates a genuine issue of material fact as to the trademark claims. A jury must decide whether SeeBeyond's challenged uses of Claredi's marks were made to carry out the purpose and intent of the Agreement.

Similarly, SeeBeyond's alternative theory that it had an implied license to use Claredi's marks as it did is also based on material facts which are in dispute and, therefore, is not subject to summary judgment.

### *Intentional Interference with a Prospective Economic Advantage*

In support of this claim Claredi asserts that it had "many strong business relationships that expressed an interest in buying Claredi's products" which SeeBeyond knew about. (First Am Compl.) Claredi claims that SeeBeyond committed wrongful acts through violations of the Federal Trademark Act of 1946, the misappropriation of trade secrets, conversion, disclosure of

confidential information, and a violation of the California Unfair Practices Act. As a result, Claredi alleges that it has lost several agreement and suffered financial losses as well as damage to its reputation. (Id.)

It is clear from the record that the basis of Claredi's claim is that SeeBeyond, through various wrongful acts, interfered with SeeBeyond's sales of the Intergrated Product (which included Claredi's Faciledi product) to SeeBeyond's customers.

"The elements of intentional interference with prospective economic advantage have been stated as follows: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." LiMandri v. Judkins, 60 Cal. Rptr.2d 539, 545 (Cal. Ct. App.1997).

Under the Agreement, among other obligations, SeeBeyond undertook an obligation to make a reasonably diligent effort get its customers to purchase the Integrated Product which was the mutual creation of Claredi and SeeBeyond. The sale of the Integrated Product would be made through licensing agreements between SeeBeyond and its customers. (Defs.' Mem. in Supp. Tab 1 Ex. B 1.1.) As part of the licensing agreement SeeBeyond was also to obtain a subscription agreement from the customer (a contract between SeeBeyond, as the agent of Claredi, and the customer) for the ongoing use of the Integrated Product.enter licensing agreements. It is clear from the Agreement that SeeBeyond and Claredi were both parties to the

licensing agreements of the Integrated Product with SeeBeyond's customers.

The Supreme Court of California has stated that, under California law, a claim of interference with a prospective economic advantage in the context of potential contractual relationships may only be asserted against a stranger to the contract.[4] Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 454, 459 (Cal.1994)("It has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract."). Moreover, the tort cause of action for interference with contract does not lie against a party to the contract. (Id.) See also, Kasparian v. County of Los Angeles, 45 Cal. Rptr.2d 90, 100 (Cal. Ct. App.1995)("There is an important limitation to the use of this tort as a remedy for the disruption of contractual relationships. ***It can only be asserted against a stranger to the relationship.*** [C]onsistent with its underlying policy of protecting the expectations of contracting parties against frustration by outsiders who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with a contract does not lie against a party to the contract.")(internal quotation and citation omitted).

The basis of Claredi's claim of intentional interference is SeeBeyond's interference in

---

[4] "Both the tort of interference with contract relations and the tort of interference with prospective contract or business relations involve basically the same conduct on the part of the tortfeasor. In one case the interference takes place when a contract is already in existence, in the other, when a contract would, with certainty, have been consummated but for the conduct of the tortfeasor.... Rather than characterizing the two as separate torts, the more rational approach seems to be that the basic tort of interference with economic relations can be established by showing, inter alia, an interference with an existing contract or a contract which is certain to be consummated, with broader grounds for justification of the interference where the latter situation is presented." Kasparian v. County of Los Angeles, 45 Cal. Rptr.2d 90, 99 (Cal. Ct. App.1995) (internal quotation and citation omitted).

potential contracts to which SeeBeyond itself would have been a party. Based on this undisputed fact, California law bars Claredi's claim against SeeBeyond because SeeBeyond was not a *stranger to the relationship* between Claredi and SeeBeyond's customers. In fact, it was SeeBeyond who was to be the conduit between Claredi and SeeBeyond's customers and SeeBeyond was to be a party to the potential licensing agreements. As a result I will grant SeeBeyond's motion for summary judgment on this claim.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant SeeBeyond's motion for partial summary judgement [#382] is **denied in part and granted in part**. The motion is **denied** as to Claredi's claims for breach of contract, *quantum meruit*, and trademark infringement. The motion is **granted** as to Claredi's claim for an intentional interference with a prospective economic advantage.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 26th day of March, 2010.